Good morning, your honors. Gretchen Fusilier on behalf of the appellant, Mr. Carroll. I would like to reserve two minutes for any rebuttal. Our position is that under the case of Sullivan v. Louisiana, the entire verdict in Mr. Carroll's trial should be vacated because of the structural error resulting from the inappropriate and wrong ex post facto based jury instruction which shows up in the record as jury instructions 25 through 27. In that jury instruction, the court actually provided a mandatory conclusive instruction to the jury that the 1999 prior conviction that Mr. Carroll had sustained qualified him as a sexually oriented offender which placed him in tier two of the registration requirement under the Ohio revised code. As the government has conceded, Mr. Carroll was not subject to any registration under the Ohio code. At the time of trial, that was plain air inasmuch as the Ohio Supreme Court had previously ruled in the Williams case which we cite that the to pass an unconstitutional law that would retroactively apply to persons similarly positioned as Mr. Carroll, essentially one who had been convicted and sentenced prior to the codification of the three tiered system that Ohio. But Sullivan specifically states, because I know you cite it for the proposition that a district court committed the structural error by instructing the jury that Carroll was required to register as a sexual offender, but Sullivan went on to explain that erecting a presumption regarding an element of the offense does not amount to structural error because a reviewing court may be able to conclude that the presumption played no significant role in the finding of guilt beyond a reasonable doubt. So if this court could conclude that the count for instruction played no significant role in Carroll's count to conviction, then how was it structural error? Because we're allowed to do that. Your Honors, I think Sullivan also indicates that because verdicts generally are not special verdicts but general verdicts, you only have a guilty or not guilty verdict. And for the court to essentially impose itself to determine whether or not the jury appropriately excluded the ex post facto evidence places the wrong entity in making the finding of guilt or innocence. Also I would suggest that the prior conviction was not introduced by itself. It was introduced in the context that Mr. Carroll was a registered sex offender. We know that is ex post facto and I have not been able to find any law that set any precedent, and I don't think the government has cited either any, that indicates an ex post facto piece of evidence is admissible under any circumstance or under any rule or theory. Well, here the registration, that part was not nearly as damning as the fact that he had been convicted, which goes along with it, but that he'd been convicted previously and that was coming in under 414. So I mean I think it's equally applicable to this argument that you're making, which I think is the spillover argument that the jury would somehow be aware of this. So I guess I'm trying to figure out, you're saying that this ex post facto information would come in, but how does that really truly affect the outcome here if the jury was going to hear that he had been convicted of a prior child pornography related offense? Well, I think that's in essence what Sullivan discusses as well, that it's speculative to determine that maybe the jury was not influenced significantly by the ex post facto piece of evidence. And there is no suggestion in the record that it actually was admitted under 414, and although I had found over the weekend in preparation as well, supplemental citation, which I didn't think I had time to electronically file. It indicates in a very similar case, U.S. versus Meckle-Murray, decided January 2015. You didn't decide it? No, I submitted it this morning, but it was returned. She did submit it this morning, but we just filed it, so we haven't had a chance to look at it. Yes, and I apologize for that. In any event, in that case, under very similar circumstances where someone had been prosecuted and convicted for two counts of child pornography, possession and distribution, I believe it was, the court held that because the records did not suggest that the evidence of statements he had made, extrinsic to the prior convictions, was admitted under Rule 414, the court would not reach that decision. The court went on further, and this is a Ninth Circuit case, the Meckle-Murray case, decided January 2015. This court went on to suggest, or to hold, that it would not reach the Rule 414 argument, because even if it had been admitted under 414, the law requires a 403 harmless error analysis. But in Mr. Carroll's circumstance, it really creates some kind of a legal oddity when one thinks that it's evidence that never should have been admitted in the first place. 414 actually addresses the admission of prior offenses or acts, not ex post facto evidence of one who is falsely accused of being a registered sex offender and being required to register. Coupled with the government's bringing in Officer Vitale, who testified regarding the trial of Mr. Carroll's trial counsel. Before we get to that, because you're running out of time, I did want to ask you, why wouldn't this all be waived, your challenge to count to? Because that was important for me to bring up. I wanted to find out. Yes, I don't think it is waived. I did with a structural error. It undermines the integrity of the Sixth Amendment's right to a jury trial, which essentially infects the entire judicial system. And that, you don't dispute that this was raised five months after the briefing in a notice of errata. No, I placed it in the original. I filed a notice of errata for the conclusion, but the case law indicates that the conclusion does not foreclose addressing issues that have been presented in the body of the open brief. Where did you present it in the body of the brief? After discussing structural error, I believe it's around page 32 of the opening brief. It says, these errors so infected the entire trial proceeding that one cannot say with an abiding conviction that Mr. Carroll's due process rights were not violated. That's the only mention, right? Well, as a conclusion for the structural error issue that I had briefed. And also, there is the case... It doesn't mention how it affected count two, I guess. You were talking about count four when you raised that. Your only statement that would support that the errors so infected the crime related to count four. I don't see where it says where it related to count two. It says the entire trial proceeding. And that's your only reference, is that correct? After discussing the structural error. That's your only reference, is that correct? I believe so. Also, under the case of Magena, I believe it is, the court has been, I guess, not a suggestion, but advised that unless it prejudices the government, that issues that would be subsumed should also be addressed. And in the Magena case, the government was actually the one who the Ninth Circuit complimented raised the issue of government misconduct. And I think under that case as well, the entirety of the prejudicial effect on Mr. Carroll's trial should be addressed. And I would reserve the rest of my time for any rebuttal. Thank you, counsel. You're right. May it please the court. Turning to the issue of Sullivan first, Sullivan clearly does not apply to this case. This was not an instruction that misinformed the jury about any fundamental principle that went beyond count four. It was not about reasonable doubt. At most, it was about elements of count four itself. And to provide some context as to what count four was, count four is just a sentencing enhancement that the jury did need to find the underlying facts for. Under 18 U.S.C. 2260A, if defendant had committed the underlying offenses while being required to register, he would be subject to a consecutive ten-year sentence, which in this case, the jury found that he was. That said, the trial took place over the course of a week. There's hundreds of pages of testimony, and just one witness out of each testimony, including the witness's background. And the fundamental proposition that these eight pages of testimony were so prejudicial as to require reversal of both of defendant's convictions, or that an instruction regarding that eight pages of testimony was somehow structural error, I think is supported by neither the facts, nor the law, nor, frankly, common sense. The case that defendant just cited, the Meckle-Murray case, I would just note that that case is distinguishable on a number of grounds. There was a preserved objection to the admissibility of the evidence at issue in that case. And here, there was no preserved objection to any of the evidence the defendant now claims causes spillover prejudice. And as a result, it's within the framework not only of spillover prejudice, but plain error beyond that, which I think mounts an insurmountable burden for a defendant on the facts here. If the court has no further questions, the government would submit. Well, I'm just curious how it was that counsel failed to discover Ohio v. Williams throughout the entire course of the trial. See, the declaration of Ms. Blanche, who was one of trial counsel, which was attached to our motion to remand, lays out the admittedly very strange history. Defendant was initially convicted of his first offense for child pornography in 1999. And at that time, Ohio had Megan's Law in effect. In 2007, the law changed, and Ohio enacted its version of SORNA. And there's absolutely no dispute the defendant was In the interim, defendant did in fact register. He continued to register after SORNA and before. And there was actually a judgment from an Ohio court in regards to a civil challenge that he brought, claiming he wasn't required to register, that said he was required to register. Two months after that decision came out, the Ohio Supreme Court case finding that SORNA did not apply came out, at which point Ms. Blanche did consult with Ohio AG's office, who was in charge of sex offender registration, who told her that defendant was nonetheless required to register under Megan's Law. And we now know that was incorrect. And the government does not disagree that it was incorrect. But it was a very strange set of circumstances that led us to that mistake at the time of trial. And I think given that strange set of circumstances, it's not a great surprise that no one figured it out. That said, we do not contest that Count 4 needs to be dismissed. I'd like to tell you what my thoughts are on this case. Child pornography is a sad and vicious crime. And the government should do everything it can to eradicate it. But there are real questions in my mind as to whether the right way has been chosen. My impression, I haven't done a great deal of research, but certainly my impression is that the kind of person who buys this sort of stuff and distributes it has got serious psychological problems, whether you call them sick or not. They are not normal people. And it's really hard to throw the weight of federal force against such people. The real people at fault, of course, are the producers of it. And there, at least the prevailing belief seems to be that they're somewhere in Eastern Europe. So they're somewhat out of reach. Then the question is, could you interrupt the distribution? And there the problem seems to be that there are multiple ways that these things can be sent to the United States. So it's a serious problem. I think that the government is right to treat it seriously. But I'm really uneasy about the people they've picked. They're sitting ducks. You can pick them up apparently at will, and you only don't do everybody. If you want to run up a few cases, you can do it very easily. But is that the way the government wants to operate? I don't know. But I think there are questions you ought to think about and the Justice Department ought to think about. I will certainly relay Your Honor's concerns. I would note just on the point here, because the sufficiency of evidence for count two wasn't challenged, it's not laid out in extreme detail in the brief, but this was an extremely righteous child pornography case. The Lost Boys site that this targeted was a site that involved conspiracy between both, as you would say, the consumers of child pornography and producers of child pornography. The members of the site communicated about how to actually groom young boys in order to have them have sexual encounters. There were discussions of so-called private collections of child pornography, which is a term of art referring to collections that were actually made by someone, either the person actually sharing them in the first instance or someone who immediately knew that person. And there was testimony about the particular collections of child pornography that were circulated that involved victims all in the United States, including in Riverside County where this was charged. So how many members did you prosecute? I believe there were almost 20 defendants, Your Honor. I can't remember right now. I believe it's about 20. And it included two members who actually testified at defendant's trial as cooperators. Was Jesso one of those? Jesso was not one of the ones who testified at the trial. But he was one of the co-defendants, yes. Was he cooperating? I don't know, Your Honor. I apologize. So you agree, at a minimum, we should reverse and remand for resentencing on count two? Yes, Your Honor. In fact, you moved for that. That's right. Was that motion opposed? It was opposed on the ground that defendant did not want remand on count two. That is when defendant took the position that count two was also in play, based on his opening brief. It was not opposed as to count – the dismissal of count four was not opposed. The remand for resentencing was opposed on the ground that defendant now contends that count two is also in jeopardy. And you don't argue that you were prejudiced by any alleged waiver in the opening brief? Frankly, Your Honor, I think the claims as to count two are so meritless, it's hard to say that we were prejudiced. What do we do with the ineffective assistance of counsel claim? Pardon me? What do we do with the ineffective assistance of trial counsel? Your Honor, I believe that falls with the rest. There is no argument in the opening brief as to how the ineffective assistance of counsel – He was not objecting or not knowing that the instruction was wrong. I mean, you would think that defense counsel would be under an obligation equal to the prosecutor of knowing that he was not required to register. Even assuming that that was the ineffective assistance of counsel, there is no prejudice that goes beyond count four. And so under Strickland, there is nothing that would reach count two. This Court regularly reviews ineffective assistance of counsel claims that are limited to a particular phase of trial, sentencing, death penalty. And it's also reviewed claims that are limited to a particular count. And the analysis of prejudice can be count-specific, and here it is. There is no allegation that any ineffective assistance went beyond count four. And since count four is off the table, the government would submit that there is no remaining claim of ineffective assistance on which defendant could possibly satisfy the Strickland factors. All right. Any further questions? Thank you. I'll give you a minute, even though you went over a bit. Regarding the Meckle-Murray case, there was a preservation of the admissibility of the evidence, but they discussed it under 404B, I believe, as opposed to 414. And in reference to the strange history of the tier three sexually offensive or offenders, I don't think that this is a unique case as far as the unique history of the charges. There have been other cases which I've come across in researching this in order to discover the ex post facto characteristic of that statute as it applied to Mr. Carroll. So I appreciate the fact that everybody, the prosecution, the government, and the defense, obviously did not research sufficiently. And I don't think that it is a very valid excuse to say that an assistant U.S. attorney spoke with someone and relied on someone's verbal representation as opposed to conducting independent research. And that goes as well for the IOC of defense counsel as well. Thank you very much. Thank you, counsel. U.S. v. Carroll will be submitted. We've previously submitted U.S. v. Jasso.
judges: Noonan, Wardlaw, Murguia